United States District Court
Southern District of Texas
FILED

**AUG 2 7** 2002

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JANE DOE, A/N/F JUNE DOE, A MINOR | : | |
| *Plaintiffs* | : | |
| | : | |
| VS. | : | CIVIL ACTION NO. B-01-136 |
| | : | |
| BOYS AND GIRLS CLUB OF | : | |
| BROWNSVILLE, INC. AND CAMERON | : | |
| COUNTY AND STATE OF TEXAS | : | |
| *Defendants* | : | |

---

**Motion to Dismiss Under Rule 12(b)(6) for Failure
to State a Claim Upon Which Relief Can be Granted**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Defendant CAMERON COUNTY, filing this *"Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted"* respectfully showing the Honorable Court as follows:

### I.  Statement of the Nature and Stage of the Proceedings

Plaintiff Jane Doe, acting as next friend of June Doe, a minor, has sued the Boys and Girls Club of Brownsville, Inc., Cameron County, and the State of Texas asserting state law negligence claims and violations of unspecified "federal laws." The suit was removed from state court (Dkt # 1). Subsequently, she has been permitted two times to amend her complaint by this Court (Dkt #s 10, 34).

Defendant Cameron County moves to dismiss her claims under Rule 12(b)(6) because (1) Cameron County has no responsibility for individuals on community supervision[1] or parole, (2) Plaintiff fails to plead a valid waiver of Defendant's sovereign immunity under the Texas Tort Claims Act regarding state law tort claims, and (3) Plaintiff fails to plead facts permitting recovery under the "state-created danger" civil rights theory of recovery.

## II. Factual Background: Plaintiff's Complaint

Plaintiff's Third Amended Complaint ("complaint") (Dkt # 34) alleges that June Doe attended recreational activities at the Brownsville Boys and Girls Club. The Complaint alleges that "defendants" had an agreement by which persons with criminal backgrounds (presumably individuals on community supervision or parole performing community service) would serve as chaperones for children attending the Boys and Girls Club. The complaint alleges that in 1996 the County and State of Texas placed persons "charged with criminal activity" in the Boys and Girls Club as part of their sentence and that one such person sexually assaulted June Doe.

The complaint alleges that defendants negligently supervised the children and the adults caring for them, negligently failed to warn the public regarding the type of people working at the Boys and Girls Club, and negligently failed to train their employees. The complaint further alleges that the State of Texas and Cameron County deprived June Doe of her "federal rights."

---

[1] In Texas law, what was once called "probation" is now called "community supervision."

### III.  Argument and Authorities

A.    Standard of Review

Under Rule 12(b)(6) the court must accept the allegations as true and must review them in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  However, the complaint must state facts, not conclusions. *Guidry v. Bank of La Place*, 954 F.2d 278, 281 (5th Cir. 1992).  Dismissal under Rule 12(b)(6) is appropriate where the plaintiff's pleadings show, beyond doubt, that the plaintiff cannot prove any set of facts that would entitle it to relief. *Garret v. Commonwealth Mfg. Co.*, 938 F.2d 591, 594 (5th Cir. 1991).

Certainly, it is time to test the sufficiency of the Plaintiff's pleadings given that she has had several chances to amend without ever clearly stating an arguable claim against Cameron County.  The district court at some point may assume that Doe has had a fair opportunity to plead her best facts. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985).  The court may consider that Doe has twice amended her complaint and has competent counsel. *Compare Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986).

B.    Cameron County has no supervisory responsibility for community supervision or parolees

Plaintiff's complaint does not explain how Cameron County would be involved in entering "an agreement whereas persons with a criminal background would act as 'chaperones' and be placed to work and watch the youth visiting and using the Club

facilities." Presumably Plaintiff means that such individuals would be on community supervision or parole and be referred to the Boys and Girls Club to perform community service. However, Texas counties, including Cameron County, have no supervisory responsibility for individuals on community supervision or parole.

Community supervision departments are established by the state district judges of each judicial district. TEX. GOV'T CODE ANN. §76.002(a)(1) (Vernon 1998). Personnel of the community supervision district are employed by the district judges. TEX. GOV'T CODE ANN. §76.002(a)(2) (Vernon 1998). Community supervision districts are not county agencies, and employees of the community supervision district are not county employees. *Randall v. Jefferson County*, 771 F.Supp. 173, 174 (E.D. Tex. 1991), *aff'd in part*, 966 F.2d 1449 (5th Cir. 1992); *Clark v. Tarrant County, Tex.*, 608 F.Supp. 209, 211 (N.D. Tex. 1985); *Shore v. Howard*, 414 F.Supp. 379, 390 (N.D. Tex. 1976); Op. Tex. Att'y Gen. JC-0254; Op. Tex. Att'y Gen. LO-97-090. Therefore Cameron County has no liability for any claim based upon the activities of someone on community supervision.

Parolees in Texas are supervised by the Board of Pardons and Paroles. TEX. GOV'T CODE ANN. § 508.112 (Vernon 1998). The Board of Pardons and Paroles determines the conditions of parole. TEX. GOV'T CODE ANN. § 508.044(b)(2) (Vernon Supp. 2002). The Board of Pardons and Paroles is an entity of Texas state government; the board members are appointed by the governor with the advice and consent of the Texas Senate. TEX. GOV'T CODE ANN. § 508.031(a) (Vernon 1998). If the perpetrator of June Doe's alleged assault

was a parolee, Cameron County played no role in his assignment to the Boys and Girls Club.

Because Cameron County does not supervise either community supervision or parolees, it cannot be liable for the acts alleged in the Complaint.

C.    Plaintiff failed to allege grounds for waiver of Cameron County's sovereign immunity from state law claims

1.    Standards for waiver of sovereign immunity under the Texas Tort Claims Act

Texas governmental units are immune from state-law tort liability unless the Texas Legislature has waived immunity. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). The Texas Tort Claims Act waives immunity for claims arising from negligence in the use of a motor vehicle or the condition or use of tangible personal or real property. TEX. CIV. PRAC. & REM. CODE ANN. §101.021 (Vernon 1997).

Claims involving the use of real property must be asserted in terms of a premises defect in the real property. *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex. App.--Eastland 1998, writ denied); *Hawley v. State Dept. of Highways and Public Transp. for State of Tex.*, 830 S.W.2d 278 (Tex.App.--Amarillo 1992, no writ); *see also State v. Tenison*, 509 S.W.2d 560, 562 (Tex. 1974). The section of the Tort Claims Act titled "Premises Liability," Section 101.022 of the Texas Civil Practice and Remedies Code, does not provide separate waiver of immunity for premises defects but rather provides only a

limitation on the waiver for conditions or use of real property in section 101.021. *Tenison*, 509 S.W.2d at 562 (construing pre-codification statute); *Hawley*, 830 S.W.2d at 281.

Where no motor vehicle or premises defect is involved, the negligence of the governmental unit must involve some condition or use of tangible property. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex. 1983). Non-use of property cannot support a claim under the Texas Tort Claims Act. *Kassen v. Hatley*, 887 S.W.2d 2, 4 (Tex. 1994). Because information is intangible, the use or misuse of information can never qualify as the use of tangible property. *University of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994).

The required causal nexus between the tangible personal property and the plaintiff's injuries exists only where the tangible personal property was the "direct device" causing the plaintiff's injuries. *Wimberley v. Sloan*, 963 S.W.2d 556, 558 (Tex. App.--Eastland 1998, no pet.); *Texas Youth Comm'n v. Ryan*, 889 S.W.2d 340, 344-45 (Tex. App.--Houston [14th Dist.] 1994, no writ); *Harris County Hosp. Dist. v. Carillo*, No. 01-99-00204-CV, 1999 Tex. App. LEXIS 7672 (Tex. App.--Houston [1st Dist.] 1999 no pet.) (not designated for publication). Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).

2.    No waiver of immunity under the facts of this case

No waiver applies in this case. The Plaintiff does not allege that Doe's injuries resulted from the use of a motor vehicle. Doe does not allege any premises defect, and, if she did, it would have to be a defect in the premises of the Boys and Girls Club, not any premises controlled by Cameron County. *See City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex. 1986) (governmental entity must be in control of premises or create dangerous condition before it can be held liable for a premises defect). Doe does not allege that Cameron County used any tangible personal property in its alleged negligent acts.

Furthermore, any allegation that Cameron County had used tangible personal property would fail because any such property would not have been the "direct device" of Doe's injuries. A brief survey of Texas cases indicates that the relationship between any negligent use of property the plaintiff might allege on the part of Cameron County would be too attenuated to meet this standard. *See Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 720 (Tex. App.--Houston [1st Dist.] 1999, pet. denied)(rooms where sexual assaults occurred that were owned and rented by state were part of the context and conditions that made plaintiffs' injuries possible, but were too attenuated to have caused plaintiffs' injuries); *Wimberley*, 963 S.W.2d at 556 (chair that government official directed plaintiff to sit in before official assaulted plaintiff was not "direct device" of the assault); *Smith v. Tarrant County*, 946 S.W.2d 496, 501 (Tex. App.--Fort Worth 1997, writ denied) (woman sexually assaulted in her home after policeman failed to detect intruder allegedly due to

malfunctioning flashlight; woman's injuries held to have been caused by the sexual assault, not the malfunctioning flashlight); *Russell v. Texas Dept. of Human Res.*, 746 S.W.2d 510, 513 (Tex. App.--Texarkana 1988, writ denied) (use of telephones, computers, and forms in investigating sexual assault of child was not such use of tangible property that would qualify for waiver of immunity); *Carrillo*, 1999 Tex. App. LEXIS at *8 (neither hospital training and supervisory materials nor rubber gloves worn by nurse during sexual assault of a patient were the "direct device" of the patient's injuries).

*Lamar University v. Doe*, 971 S.W.2d 191 (Tex. App.--Beaumont 1998, no pet.) involves facts and claims similar to this case. In that case, plaintiffs alleged that minor children were sexually assaulted by a student in his dormitory room, and that the university was negligent in failing to warn and failing to protect the children. *Id.* at 195. The court held that allegations of failure to warn and failure to protect involve negligent judgment and not the negligent use of property, and, therefore, are analogous to claims of negligent use of information and do not satisfy the limited waiver of sovereign immunity. *Id.* at 197; *see also Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 256 (Tex. App.--San Antonio 1999, pet. denied) (real substance of allegation that sexually assaulted plaintiff should not have been given ground pass at state mental institution was that institution was negligent in patient evaluation, a claim concerning the use of information and therefore covered by immunity).

In this case, no tangible personal property used by Cameron County was the "direct device" of Doe's injuries.  The allegations against Cameron County concern the use of information - it should have realized chaperones with criminal backgrounds were dangerous, it should have provided information to parents about the backgrounds of the chaperones, and it's information about the chaperones' backgrounds should have caused them to more closely supervise (i.e., gather information about) the chaperones and children, and to provide more training (i.e., provide more information) to the chaperones.  This case is indistinguishable from *Lamar* and the other cases cited above.  Plaintiff cannot prove any set of facts that would entitle it to an exception from sovereign immunity under the Texas Tort Claims Act.

D.      <u>Plaintiff does not state a claim for deprivation of any federal right</u>

Plaintiff's Complaint does not specify the "civil rights" or "federal laws" it alleges were violated.  Importantly, plaintiff does not allege that an employee or official of Cameron County sexually assaulted her.  Rather, plaintiff asserts that the acts and omissions of Cameron County created a dangerous situation in which the sexual assault could be perpetrated by a third party.  The only possible actionable theory for such allegations is a Fourteenth Amendment Substantive Due Process claim under 42 USC Section 1983, asserted through the "state-created danger" theory.

1.      <u>The Fifth Circuit has not recognized the "state-created danger" theory</u>

Section 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 386, 393 (1989). The first inquiry in a section 1983 case is to isolate the provision of the federal Constitution that is allegedly infringed. *Id.* at 394. When the plaintiff alleges deprivation of his or her constitutional rights by means other than seizure by a state officer, the plaintiff must rely on "Substantive Due Process" under the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).

In *Deshaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) the Court rejected the idea of a claim under the Fourteenth Amendment for the state's failure to protect a child from abuse. In its opinion, the Court stated "[w]hile the State may have been aware of the dangers [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them." *Id.* at 201. From this sentence some courts (although not the Fifth Circuit) have inferred that if the state *does* create the dangers faced by the plaintiff, then under some circumstances the state may be liable under the Fourteenth Amendment. If such an exception is recognized, it is a species of Substantive Due Process. *Lefall v. Dallas I.S.D.*, 28 F.3d 521, 531 (5th Cir. 1994); *Dykema v. Skoumal,* 261 F.3d 701, 705 (7th Cir. 2001); *S.S. v. McMullen,* 225 F.3d 960, 963 (8th Cir. 2001)(en banc), *cert. denied,* 121 S.Ct. 1227 (2001); *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1238 (10th Cir. 1999).

This exception has never been accepted in the Fifth Circuit, and is not supported by a full reading of *Deshaney* or a proper understanding of Fourteenth Amendment law. On

March 13, 2002, the Fifth Circuit granted petition for rehearing en banc in *McClendon v. City of Columbia,* which briefly was the only Fifth Circuit case to recognize the validity of any "state created" danger exception to *Deshaney.* 258 F.3d 432 (5th Cir. 2001) *m. reh. en banc granted*, 285 F.3d 1078 (5th Cir. March 13, 2002). As a result, the panel opinion is automatically vacated and is thus no longer the law in this Circuit. *See* 5th CIR. LOC. R. 41.3.

This restores the pre-*McClendon* status. The Fifth Circuit previously questioned the "state-created danger" doctrine and consistently refused to adopt it. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 530 (5th Cir. 1994) (questioning the doctrine); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) ("The state-created danger theory has not been adopted in this Circuit"), *cert. denied*, 119 S. Ct. 65 (1998); *see also Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 398, 392 n.6 (5th Cir. 1999); *Piotrowski v. City of Houston,* 237 F.3d 567, 585 (5th Cir. 2001), *reh. denied,* 251 F.3d 159 (5th Cir. 2001), *cert. denied,* 122 S. Ct. 53 (2001).

A fair reading of the U.S. Supreme Court's opinion in *DeShaney* reveals that there is no such state created danger doctrine. *DeShaney* holds that an affirmative constitutional duty to provide protection arises only from the state's affirmative act of taking an individual into custody, which, in Due Process nomenclature, "deprived" the individual of the personal "liberty" necessary for self-protection. 489 U.S. 189, 200-01 (1989).

The state-created danger doctrine as developed by some lower courts is a gloss on the body of constitutional common law known as Substantive Due Process. For good reason, the U.S. Supreme Court has exhorted all federal courts to resist the temptation to implement their policy preferences under this concept. "'[G]uideposts for responsible decision making in this unchartered area are scarce and open-ended,'" and when federal courts extend constitutional protection to an asserted right, to a great extent they "place the matter outside the arena of public debate and legislative action." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)); *see also Causeway Medical Suite v. Ieyoub*, 109 F.3d 1096, 1113-24 (5th Cir.) (E. Garza, concurring) (criticizing free-roaming judicial activism under the guise of interpreting the word "liberty" in the Due Process Clause, and arguing that courts abusing judicial power in this manner have effectively abrogated the power reserved by the people to amend the Constitution), *cert. denied*, 522 U.S. 943. Substantive due process is not a font of constitutional tort law simply to be thrust upon the states. *Paul v. Davis*, 424 U.S. 693, 701 (1976).

Nothing in the text or history of the Due Process Clause supports the claim that any constitutional liberty interest exists to be free from a state-created risk of being victimized by private crime. *See Collins v. City of Harker Heights*, 503 U.S. 115, 130 (1992) (rejecting claim of the family of a deceased city worker who died of asphyxia in a city sewer system — certainly a danger both created by the state and known to be dangerous — and concluding

that "the Due Process Clause does not impose an independent federal obligation on municipalities to provide certain minimal levels of safety and security in the workplace."); *see also Jackson v. City of Joliet*, 715 F.2d 1200, 1203-04 (7th Cir. 1983) (Posner, J.) (noting that the Fourteenth Amendment, adopted in 1868 at the height of laissez-faire thinking, was concerned with official oppression, such as misuse of the state's power to kill, not with the state's failure to prevent death).

In deciding whether such a purported interest warrants constitutional recognition, this Court should not begin by plucking an isolated sentence out of context from the *DeShaney* opinion. The proper starting point should be the United States Constitution itself, with due regard for the nation's history, legal traditions, and practices in the relevant area. *See Washington*, 521 U.S. at 710 (and cases cited). Those sources provide no support for any constitutionally-based right to be free of some amorphous governmentally-enhanced risk of being victimized by private crime.

    2.   Plaintiffs cannot satisfy the elements of a "state-created danger" theory

As this is a "Substantive Due Process" claim, the "shock the conscience" test is a threshold test. *Lewis,* 523 U.S. at 847, n. 8. It is only after the executive action reaches that necessary level of egregiousness that the court begins to examine historical examples to see if a right to be free of such executive action exists. *Id.*

To support a Substantive Due Process claim, the plaintiff must prove that the state's conduct was conscience shocking. *Daniel v. Williams,* 474 U.S. 327, 332 (1986); *Lewis,* 523

U.S. at 850. The other circuits have held that "shock the conscience" is the correct standard for "state created danger" claims. *S.S.,* 225 F.3d at 964; *Sutton,* 173 F.3d at 1238; *cf, Lefall,* 28 F.3d at 531 (predicting that "shock the conscience" standard would apply to any "state created danger" exception to *DeShaney*). Therefore, if the "state created danger" doctrine is recognized by the Fifth Circuit, "conscience shocking" behavior should be the threshold.

Such may require more than deliberate indifference, which in turn is more than ordinary or even gross negligence. *Id.* at 848-849. Legal conclusions like "fraud," "malice", or "reckless" are insufficient to state a Substantive Due Process Claim. *Id.* at 854. Instead the facts alleged must show a level of abuse of power that is so brutal or offensive that it does not comport with notions of fair play and decency. *Id.* at 846, 847; *S.S.,* 225 F.3d at 964. The focus is on the state's acts, not the criminal's acts or his crime. *S.S.,* 225 F.3d at 964.

Assuming *arguendo* that a "state created" danger exception to *DeShaney* is ever recognized, the Fifth Circuit has outlined the elements that such a theory must include:

a.   The state actors must intentionally create an environment that is dangerous;

b.   The state actors must know that it is dangerous;

c.   The state actors must have used their authority to create an opportunity that otherwise would not have existed for a third party to commit the crime;

d.   The state actors must affirmatively place that person in the dangerous environment, effectively stripping such person of his or her ability to defend themselves or cut off potential sources of private aid; and

e.     The action must be done with deliberate indifference.

*Piotrowski,* 237 F.3d at 585; *Randolph,* 130 F.3d at 731.

The key to the "state created danger" theory lies in the state actor affirmatively placing the individual in a position of danger, effectively stripping a person of self defense or cutting off private sources of aid. *Piotrowski,* 237 F.3d at 585; *citing Johnson v. Dallas I.S.D.,* 38 F.3d 198, 201 (5th Cir. 1994). At the time the official acted, he must have subjective knowledge of an immediate risk to a specific victim. *Saenz v. Heldenfels Bros., Inc.,* 183 F.3d 289, 291-92 (5th Cir. 2000) (rejecting claim where defendants should have known drunk driver posed general risk to the public, but was not aware of an immediate danger facing a known victim).

3.     <u>Cameron County's actions were at most negligent, not "deliberately indifferent" or "conscience shocking."</u>

At best, the wrongful conduct alleged against Cameron County was negligence. The final element of the "state-created danger" theory requires either deliberate indifference or "conscience-shocking" behavior. Plaintiffs allege an error in judgment - a mistake in weighing the contrary purposes of providing community service opportunities for the rehabilitation of former offenders and protecting the public from harm. Community service has long been recognized as a valuable tool for rehabilitating offenders. Decisions regarding the rehabilitation of offender's are difficult discretionary decisions, which is why the law confides them to judges and parole boards. If an error in judgment was made, the error was

not done with deliberate indifference, and the error does not "shock the conscience." *See Lewis,*(officer's mistake in emphasizing law enforcement considerations over safety considerations in pursuing fatal high speed chase may have been negligent, but did not demonstrate "deliberate indifference" or "shock the conscience"). If it were otherwise, then judges and state agencies that order probation and community service would shortly become the guarantors for victims of offenses committed by persons on probation.

In *S.S.,* state protective services removed a three year old girl from her father's custody based on suspected sexual abuse by an unknown person, as well as gross neglect by the father. 225 F.3d at 962, 965. Two years later, in response to the father's continued efforts to regain custody, the agency returned her to her father. During those two years, the case workers learned that the father was close friends with Griffis, a convicted child molester; Griffis visited the girl with her father in foster care; a psychologist warned the case workers that the father was "dangerously sympathetic" to a known child sexual offender and that reunification could put the child at risk. *Id.* at 965. Within three months of the girl's return to her father, Griffis sexually abused her and put her in the hospital for a week. *Id.*

The 8th Circuit upheld a Rule 12(b)(6) dismissal on the grounds that responding to the father's request for custody was not conscience shocking. *Id.* at 964. In doing so, the 8th Circuit re-emphasized that the court must focus on the egregiousness of the state's acts, not the criminal's acts or the resulting injuries.

> We are mindful that the acts that S.S. claims were perpetrated against her once she was returned to her father were utterly indecent and egregious; and we do

not doubt that those acts themselves would shock the conscience. They certainly shock ours. But we focus here, not on those acts, but on the state's acts that S.S. says led to her injuries. We do not see how we could well hold those acts actionable without violating the Supreme Court's caveat against making 'of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' [citations omitted]

*Id.* at 965.

The alleged actions of Cameron County in this case are no more conscience-shocking then those of the government agency is *S.S.*

### 4.   Cameron County did not restrain Doe.

In this case, Cameron County did not restrain Doe's liberty nor impose any custody on her as required by *DeShaney.* Cameron County had nothing to do with Doe's decision to go to the Boys and Girls Club. Cameron County did not "affirmatively place [Doe] in the dangerous environment, effectively stripping [her] of . . . her ability to defend [herself] or cut off potential sources of private aid."

Compare *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198,202 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995); and *Randolph,* 130 F.3d at 731. In *Johnson,* a non-student entered a high school campus with a handgun, started a disturbance, and shot a student. 38 F.3d at 199. The Fifth Circuit held that simply because the victim was a student at school was insufficient to allege school officials stripped him of a self-defense or cut off sources of escape or aid. *Id.* at 202. The claim failed because there was no allegation that officials

placed him in a confrontational encounter with a violent criminal or put the criminal in front of him. *Id.*

In *Cervantes,* the plaintiff had been the subject of a sanity hearing; the court ordered her to get outpatient therapy and she voluntarily agreed to move into  government supervised housing that facilitated her treatment.  130 F.3d at 729.  The plaintiff found a discarded syringe in the trash there and accidentally injured herself. *Id.*  Precisely because her presence was voluntary, the 5th Circuit found she had not been stripped of the ability to protect herself. *Id.* at 731.

5.      Cameron County lacked knowledge of an immediate risk to a specific victim.

Cameron County had no basis for the specific knowledge that June Doe in particular was at risk. *See Saenz*, 183 F.3d at 291-92.  The "state created danger" doctrine will not apply where the government actor is not subjectively aware of any immediate danger facing the victim. *Saenz*, 183 F.3d  at 391.  There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim.  *Id.* at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver.  183 F.3d at 390.  About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id.*  The Fifth Circuit affirmed, holding that allegations the officers were aware of the danger posed by the drunk and made plaintiffs more vulnerable were insufficient to state a claim.

*Id.* at 391.  The officers did not deny life or liberty if they were not subjectively aware the plaintiffs were there.  *Id.*  They did not violate Due Process by increasing the risk of harm to unidentified members of the public.  *Id.* at 392.  The victim's identity must be known to the officer at the time he acts.  *Id.*

There is no allegation that Cameron County knew that the alleged perpetrator had a propensity for sexual assaults, nor that Cameron County had any role in determining when the perpetrator would be at the Boys and Girls Club or when Doe would be there.  Cameron County had no basis for knowing that Doe specifically was at any risk different than any other girls the perpetrator might encounter, either at the Boys and Girls Club or elsewhere.

> 6.    <u>Cameron County did not create a danger that would not otherwise exist.</u>

The alleged perpetrator was not an inmate, but a probationer or parolee.  He could have committed sexual assault in any number of settings other than the Boys and Girls Club. His presence at the Boys and Girls Club did not create a danger that would not otherwise exist.

## V. Prayer

Defendant Cameron County prays that Plaintiff's claims against it be in all things dismissed, and for all such further relief as it may be entitled to.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
P. O. Box 1429
Harlingen, Texas 78551-1429
Phone:        956/428-7495
TeleFax:      956/428-2954

*Craig Vittitoe dpn*
**CRAIG H. VITTITOE**
State Bar No. 20593900
Fed I.D. No. 18756

**SCOTT T. CLARK**
State Bar No.00795896
Fed I.D. No.  21676

**ROGER W. HUGHES**
State Bar No. 10229500
Fed I.D. No.   5950

**ATTORNEYS   FOR   CAMERON COUNTY**

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that a true and correct copy of the above and foregoing instrument was forwarded to the following attorneys of record on this the 26th day of August, 2002:

Albert Villegas                 **VIA CMRRR # 700 1670 0013 4635 7802**
**VILLEGAS LAW FIRM**
1324 East 7th Street
Brownsville, TX 78520

Ms. Carla M. Saenz Martinez                    **VIA REGULAR MAIL**
**CARLA M. SAENZ & ASSOCIATES, P.L.L.C.**
1325 Palm Boulevard, Suite H
Brownsville, TX 78520
*Attorney for Boys and Girls Club of Brownsville, Inc.*

Ms. Jeanette Deponte                           **VIA REGULAR MAIL**
**TEXAS ATTORNEY GENERAL'S OFFICE**
William P. Clements Building, 7th Floor
P.O. Box 12548
Austin, TX 78711
*Attorney for State of Texas*

**SCOTT T. CLARK**